**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PHILIP MOLLICHELLA,** | : | |
| | : | Case No.   18-cv-4868-JMY |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| **BOARD OF SUPERVISORS WEST** | : | |
| **BRANDYWINE TOWNSHIP, ET AL.,** | : | |
| | : | |
| *Defendants* | : | |

**<u>MEMORANDUM</u>**

YOUNGE, J.                                                     APRIL 16, 2020

Before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6) ("Mot.," ECF No. 30).  The Court finds this matter appropriate for resolution

without oral argument.  Fed. R. Civ. P. 78; L.R. 7.1(f).  For the reasons set forth below,

Defendants' Motion will be granted in part and denied in part, but Plaintiff will be given leave to

file an amended complaint as explained herein.

## I.     BACKGROUND

### A.  Facts

Unless otherwise noted, the following facts and allegations are taken from Plaintiff's

Second Amended Complaint ("SAC," ECF No. 15).[1]  Plaintiff Philip Mollichella was employed

as a "full-time Narcotics officer" with the West Brandywine Township Police Department for

approximately 12 years, "until on or around April 10, 2019, when [Defendant] Board of

Supervisors of West Brandywine Township voted to ratify a recommendation to terminate."  (*Id.*

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

¶¶ 1, 8.)  Prior to his termination, "Defendant installed a timeclock."  (*Id.* ¶ 17.)  Plaintiff

maintains that "[i]n May and/or June 2018 [he] noticed his time clock entries were moving from

the time he clocked-in to the start time of his shift[, and furthermore,] when Plaintiff would

clock-out at the end of a shift, the time entry would similarly jump back to the scheduled end-of-

shift time, thus removing time Plaintiff worked."  (*Id.* ¶¶ 18-19).  "Plaintiff complained to

Defendant [Jeff] Kimes [(Plaintiff's supervisor and 'Acting Officer in Charge')] about the

change in time entries."  (*Id.* ¶¶ 4, 23.)  Plaintiff also "complained to Bonnie Lucy, the Treasurer

and Senior Accountant for Defendant West Brandywine Township," who then informed

"Plaintiff that Defendant Kimes was manually adjusting some entries."  (*Id.* ¶¶ 28-29.)  Plaintiff

further alleges that both Kimes and Lucy informed Township members of Plaintiff's complaints.

(*Id.* ¶¶ 27, 38.)  Plaintiff separately alleges that the Township maintained a policy requiring all

officers to be in uniform ten minutes prior to the start of their shift, and that they were not paid

for the time "working before shift."  (*Id.* ¶¶ 10-14.)  Plaintiff alleges that after he made these

complaints, "Defendants have subjected Plaintiff to multiple and various adverse acts in

retaliation[.]"  (*Id.* ¶ 39.)

### B. Procedural History

Based on the foregoing, Plaintiff initiated this action on November 9, 2018.  (ECF No. 1.)

Thereafter, the parties stipulated to stay the proceedings in an effort to mediate, and the Court

placed the action in civil suspense.  (ECF Nos. 20, 22.)  However, mediation was unsuccessful.

(*See* ECF No. 27.)  Thus, on May 20, 2019, Plaintiff filed his SAC, in which he asserts three

claims for relief:

**COUNT I**:  Non-Payment of Straight Time and Overtime in Violation of the Fair
Labor Standards Act ("FLSA"), 29 U.S.C. § 207 *et seq.*;[2]

---

[2] Plaintiff asserts this claim on behalf of himself and a collective class.  (*See* SAC ¶ 53.)  The
class is defined as "a collective of similarly situated opt-in Plaintiffs who have worked for the Police

**COUNT II**:   Retaliation in Violation of the FLSA, 29 U.S.C. § 215(a)(3); and

**COUNT III**:   Retaliation in Violation of the Pennsylvania Whistleblower Law ("PWL"), 43 Pa. Cons. Stat. Ann. § 1423 *et seq*.

(SAC ¶¶ 49-75.)  Plaintiff seeks monetary damages for time worked without pay, including compensatory damages, equitable damages, liquidated damages, as well as attorneys' fees and costs.  (*See id*.)

Defendants filed the instant motion on December 18, 2019.[3]  Plaintiff filed his opposition to Defendants' motion on December 30, 2019 ("Opp.," ECF No. 33-2).

## II.    LEGAL STANDARD

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  *Id*. at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  *Id*. (quoting *Iqbal*, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content

---

Department for West Brandywine Township in the three (3) years before the initiation of this litigation, and who have suffered similar harms and damages as Plaintiff Mollichella due to similar policies and procedures, including unpaid work, unpaid overtime, time-clock manipulation, and/or other violations[.]" (*Id*. ¶ 2.)

[3] Defendants also filed a Motion for Sanctions seeking dismissal of all claims with prejudice (ECF No. 31), which the Court denied on March 26, 2020 (ECF No. 39).

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (quoting *Iqbal*, 556 U.S. at 678).

Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "[the district court] must tak[e] note of the elements [the] plaintiff must plead to state a claim;" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).  Furthermore, when considering a motion to dismiss, the court may only review "the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

When a motion to dismiss is granted, the court must decide whether to grant leave to amend.  The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted.  *See, e.g., Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990).  However, a court need not grant leave to amend when it would be an exercise in futility.  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, *i.e.*, if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing

that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).

### III.   DISCUSSION

Defendants move to dismiss all of Plaintiff's claims.  Specifically,  Defendants maintain that: (1) the FLSA non-payment of wages claim fails because "the time clock rounding policy is permitted as a matter of law[,]" Plaintiff "does not aver that he actually worked during the time in question[,]" and because the "Township has adopted a Section 7(k) partial overtime exemption[;]" (2) the FLSA retaliation claim fails because the Board of Supervisors and Kimes did not retaliate against Plaintiff; and (3) the PWL retaliation claim fails because Plaintiff made his complaint out of "consideration of personal benefit[.]"  (Mot. at 10-21.)  Plaintiff disputes these arguments and asserts that he has stated plausible claims for relief.  (*See* Opp. at 5.)  The Court will address each claim in turn.

#### A.  Count I—Violation of the FLSA

The SAC alleges in Count I that Defendants violated § 207 of the FLSA by "failing to pay Plaintiff and similarly situated individuals time-and-a-half for time worked in excess of forty (40) hours in a workweek[, and] by failing to pay Plaintiff and similarly situated individuals straight time for time worked."  (SAC ¶¶ 55-56.)  Defendants move to dismiss arguing that the SAC fails to state an FLSA claim upon which relief can be granted because it fails to allege that the Township's policies regarding overtime pay were not in accordance with the exemption permitted in § 207(k).  The Court agrees with Defendants that the SAC fails to allege facts that support a FLSA claim.

Congress enacted the FLSA to eliminate labor conditions "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of

workers." 29 U.S.C. § 202.  The FLSA generally requires employers to pay overtime rates when

employees work more than forty hours per workweek.  29 U.S.C. § 207(a)(1).  Section 207(k) of

the FLSA "contains a partial exemption from the general overtime provisions, permitting public

agencies to establish a 'work period' that lasts from seven to 28 days for employees engaged in

law enforcement or fire protection activities."  *Rosano v. Twp. of Teaneck*, 754 F.3d 177, 185 (3d

Cir. 2014) (citing 29 U.S.C. § 207(k)).

Plaintiff contends that the Section 207(k) exemption "does not apply to Defendants or

Plaintiff(s) as it conflicts with the provisions of the [Collective Bargaining Agreement ('CBA'),

and that] Defendants attempted to implement 29 U.S.C. § 207(k) in March of 2019, but the effort

was rejected, because the regulation conflicts with the CBA."  (SAC ¶¶ 33-34; *see also* SAC Ex.

A ("Contract Agreement Between West Brandywine Township and the West Brandywine Police

Association").)  However, the Third Circuit has held that "employers seeking to qualify for the

§ 207(k) exemption need not express an intent to qualify for or operate under the exemption."

*Rosano*, 754 F.3d at 186.  The only question is whether the employer "meet[s] the factual criteria

set forth in Section 207(k)."  *Id*.  To qualify for the Section 207(k) exemption, the employer must

demonstrate that (1) the employees at issue are engaged in fire protection or law enforcement,

and (2) the employer established a qualifying work period.  *Id*. at 185.

In this case, Plaintiff's SAC admits facts which establish that Defendants are entitled to

the Section 207(k) exemption.  First, Plaintiff states in his SAC that he "was a member of West

Brandywine Township Police Department . . . working primarily as a full-time Narcotics

officer," (*see* SAC ¶ 1), and thus he was "engaged in . . . law enforcement."  *Rosano*, 754 F.3d at

185.  Second, Plaintiff admits that Defendant Township established a 14-day work period (*see*

SAC Ex. A at 2 ("Scheduled Shift: Six (6) twelve (12) hour days and one (1) eight (8) hour days

6

in a pay period worked by an officer; Pay Period: A period of time which shall include two calendar weeks.")), which qualifies under Section 207(k)(2) because it is "at least 7 but less than 28 days." 29 U.S.C. § 207(k)(2). Thus, in the Court's view, Defendants qualify for the Section 207(k) exemption.

The Section 207(k) exemption "increases the number of hours . . . officers may work in a work period before triggering overtime requirements." *Rosano*, 754 F.3d at 189 (citing 29 C.F.R. § 553.230(c)). For a 14-day work period, law enforcement employees may work 86 hours before triggering overtime requirements. *See* 29 C.F.R. § 553.230(c). The SAC states that in addition to the 80-hour work period (*see* SAC Ex. A at 2), Plaintiff was also required to work an additional 70 minutes[4] per work period for being "in uniform and ready 10 minutes prior to the start of [his] shift" (*see id.* ¶ 10) and had at least an additional 140 minutes[5] unpaid work time per work period for time excluded when Defendant Kimes allegedly manipulated the time clock entries (*see id.* ¶¶ 18-19). This totals 83.5 hours worked every two weeks. This Court is required to "accept all factual allegations as true," and "construe the complaint in the light most favorable" to the Plaintiff, *see Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), but even so, Plaintiff's assertion that he worked at least 83.5 hours every two weeks falls short of the 86-hour threshold. Thus, the Court finds that the SAC fails to allege facts that support a

---

[4] Defendants argue that the ten minutes spent donning/doffing uniforms is not compensable under the FLSA. (Mot. at 12-13 (citing *Rosano*, 754 F.3d at 194).) However, as further discussed *infra*, the Court need not address this argument at this time because even assuming that the ten minute period qualifies as compensable time, Plaintiff still has not exceeded the 86-hour threshold for overtime under the FLSA.

[5] To illustrate how "his time clock entries were moving from the time he clocked-in to the start time of his shift" Plaintiff calculated unpaid time at 8 minutes. (*See* SAC ¶ 18 ("5:38 p.m. clock-in moved to 5:45 p.m. for beginning of shift").) Thus, the Court conservatively calculated a total of 140 unpaid minutes as follows: (10 unpaid minutes prior to shift + 10 unpaid minutes after shift) x 7 (the number of shifts in work period) = 140 minutes.

FLSA claim.  *See, e.g., White v. Chester Hous. Auth.*, No. 17-1790, 2018 WL 1620982, at *7 (E.D. Pa. April 4, 2018) (concluding on a motion to dismiss that the "allegations are suggestive that [d]efendant has adopted a work period that triggers the § 207(k) exemption, and are also suggestive that [d]efendant has complied with the overtime pay requirements permitted by that exemption, as they indicate that [d]efendant was not requiring its law enforcement employees to work more than 86 hours in a fourteen-day period"); *see also Stewart v. Pemberton Twp.*, No. 14-6810, 2015 WL 5164717, at *3 (D.N.J. Sept. 2, 2015) (same).

In summary, given the allegations of the SAC, Defendants are entitled to the Section 207(k) exemption as a matter of law.  However, whether Plaintiff or others similarly situated worked more than 86 hours in a 14-day work week is a question of fact.  Accordingly, the Court dismisses *without prejudice* Count I, as Plaintiff may be able to plead with specificity the number of hours in excess of 86 he or others similarly situated worked.

### B.  Count II—Retaliation under the FLSA

Next, Defendants argue that Plaintiff's retaliation claim under the FLSA fails because (1) Plaintiff does not "aver with specificity that any members of the Board of Supervisors were aware of his complaints or that they took adverse action against him[,]" and (2) as to Kimes, Plaintiff fails to aver facts "to suggest that the alleged disciplinary action taken against him was initiated or taken by Kimes, or done at his request."  (Mot. at 15, 18-19.)  Plaintiff responds that he "has pleaded that Defendants retaliated in both temporal proximity to the complaints and by and through actual antagonistic conduct or animus . . . [and that these] allegations respectfully rise above the speculative level."  (Opp. at 14.)  The Court agrees with Plaintiff.

The FLSA prohibits employers from "discharg[ing] or in any manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to

be instituted any proceeding under or related" to the FLSA.  29 U.S.C. § 215(a)(3).  To assert a

retaliation claim under the FLSA, a plaintiff need only allege that his employer retaliated against

him by engaging in an action "that would have been materially adverse to a reasonable

employee" because the "employer's actions . . . could well dissuade a reasonable worker from

making or supporting" a FLSA claim.  *Burlington Northern & Santa Fe Ry. Co. v. White*, 548

U.S. 53, 57 (2006); *see also Jones v. Amerihealth Caritas*, 95 F. Supp. 3d 807, 814 (E.D. Pa.

2015) (noting that "a plaintiff must plead that (1) the plaintiff engaged in protected activity, (2)

the employer took an adverse employment action against him, and (3) there was a causal link

between the plaintiff's protected action and employer's adverse action." (internal quotation

marks and citation omitted)).

Plaintiff asserts that he "complained to Kimes about the change in time entries" and that

"Kimes informed Township members of Plaintiff's complaint."  (SAC ¶¶ 23, 27, 35, 28.)  It is

further alleged that Plaintiff then complained to the Township's Treasurer and Senior Accountant

about non-payment, and that Township officials were also made aware of this complaint.  (*Id*. ¶¶

28-29, 35, 38.)  Furthermore, Plaintiff claims that after he made these complaints "Defendants

have subjected Plaintiff to multiple and various adverse actions in retaliation[,]" including:

unnecessary disciplinary action, suspension, removal of job responsibilities, demotion, and

termination.  (*Id*. ¶ 39(a)-(e).)  More specifically, Plaintiff asserts he "was relegated to a traffic

officer, and was not provided the requisite tools to adequately perform the job."  (*Id*. ¶ 41.)

Plaintiff also asserts that he was "replaced by a significantly less experienced individual to do a

job (Narcotics), for which Plaintiff is/was an awarded and recognized veteran."  (*Id*. ¶ 47.)

Lastly, Plaintiff asserts that Kimes "is the current Acting Officer in Charge[,] . . . was a

supervisor of Plaintiff . . . [and] "[t]o the extent Kimes was not directly involved in adverse

actions taken against Plaintiff, he remains liable under the Cat's Paw theory of liability for having coerced the adverse actions."  (*Id*. ¶ 4.)[6]  Accepting all factual allegations in the SAC as true, and construing those facts in a light most favorable to Plaintiff, the Court finds that Plaintiff's claim of retaliation under the FLSA is "plausible on its face."  *Twombly*, 550 U.S. at 570.  As such, at this early stage of the proceedings, the Court declines to dismiss Count II of the SAC.

### C.  Count III—Retaliation under the PWL

The final component of Defendants' motion challenges the substance of Count III of the SAC, which avers a violation of the PWL.  (*See* SAC ¶¶ 68-75.)  Specifically, Plaintiff asserts that Defendants are subject to the PWL and that Plaintiff "engaged in protective activity in that: (a) [h]e made a good faith complaint of wrongdoing when he complained that time-clock entries were being changed by Defendant Kimes and/or (b) [h]e made a good faith complaint of waste and wrongdoing when he complained about Defendant Kimes paying less into his pension plan." (*Id*. ¶ 71.)

The PWL provides, in relevant part:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of

---

[6] Plaintiff further notes that "[u]nder the Cat's Paw [theory of liability], the discriminator coerces another to act for the discriminatory purpose.  Clearly an Acting Chief of Police is capable of coercing the Township Board to discipline and terminate an officer."  (Opp. at 14 n.2 (citing SAC ¶ 4)); *see also McKenna v. City of Phila.*, 649 F.3d 171, 177 n.6 (3d Cir. 2011) ("[T]he term 'cat's paw' derives from one of Aesop's fables.  In the fable, a mischievous monkey compliments his company, a cat, on his abilities and suggests that the cat steal the chestnuts that they were watching roast in a fire.  The naïve cat, flush with the monkey's flattery, readily obliges.  The cat proceeds to pluck the chestnuts from the flames, singeing his paws in the process, while the monkey snatches the chestnuts away." (citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 415 (2011))).  Although the allegations in the SAC are far from overwhelming, the Court agrees with Plaintiff that he has alleged sufficient facts to survive a motion to dismiss.  In other words, it is plausible for the Court to infer from the allegations in the SAC that Acting Chief of Police Defendant Kimes coerced the Township to terminate Plaintiff.  However, the Court notes that discovery should further illuminate Kimes' role in Plaintiff's ultimate termination.

> the employee makes a good faith report or is about to report,
> verbally or in writing, to the employer or appropriate authority an
> instance of wrongdoing or waste.

43 Pa. Stat. Ann. § 1423(a).

Recovery under the PWL requires evidence that plaintiffs: (1) reported an instance of wrongdoing or waste to an appropriate authority; and (2) there is a causal connection between the report and the alleged retaliation. *Id*. § 1424(b). "Wrongdoing" is defined as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." *Id*. § 1422; *see also Golaschevsky v. Dep't of Envtl. Prot.*, 720 A.2d 757, 759 (Pa. 1998). "Good faith report," in turn, is defined as "[a] report of conduct defined in this act as wrongdoing or waste *which is made without malice or consideration of personal benefit* and which the person making the report has reasonable cause to believe is true." *Id*. § 1422 (emphasis added).

Defendants argue that Plaintiff's claim brought pursuant to the PWL should be dismissed because Plaintiff's reports of wrongdoing were not made without consideration of personal benefit and thus were not made in good faith. (Mot. at 20.) Plaintiff responds "Defendant Kimes changed time entries for all officers[,]" and that Plaintiff "was considering these officer[s] as well as the public at large[.]" (Opp. at 16.) The Court agrees with Defendants and finds that regardless of whether Plaintiff's report of misconduct by Kimes (*i.e.*, time-clock manipulation/paying less into pension) benefited other employees within the police department, it does not negate the fact that Plaintiff's reports were made for his own personal benefit. *See Frazier v. City of Phila.*, No. 17-5421, 2020 WL 897698, at *12 (E.D. Pa. Feb. 26, 2020) (dismissing PWL claim and finding plaintiff's "primary purpose in filing her grievance was to

attain more overtime for herself, a personal benefit"); *see also Martin v. George Junior Republic in Pa.*, No. 15-471, 2015 WL 5472885, at *6 (W.D. Pa. Sept. 16, 2015) (finding complaints that all employees were not paid their lawful wages insufficient under the PWL as they were also for personal benefit).

Thus, Plaintiff's reports of wrongdoing were not made in good faith as that term is defined under the PWL, and, therefore, the Court will dismiss *with prejudice* Count III.

## IV.    CONCLUSION

For the reasons discussed above, the Court will grant in part and deny in part Defendants' Motion to Dismiss.  An appropriate Order will follow.


**IT IS SO ORDERED.**


                                                  **BY THE COURT:**

                                                  /s/ John Milton Younge
                                                  _____
                                                  **Judge John Milton Younge**